UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-2634 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| MONEYGRAM INTERNATIONAL, INC., | : **SECURITIES EXCHANGE ACT OF** |
| W. ALEXANDER HOLMES, AMB. | : **1934** |
| ANTONIO O. GARZA, ALKA GUPTA, | : |
| FRANCISCO LORCA, MICHAEL P. | : **JURY TRIAL DEMANDED** |
| RAFFERTY, JULIE E. SILCOCK, W. | : |
| BRUCE TURNER, and PEGGY VAUGHAN, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against MoneyGram International, Inc. ("MoneyGram or the "Company") and the members MoneyGram's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of MoneyGram by affiliates of Madison Dearborn Partners, LLC ("Madison Dearborn Partners")

2.  Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on March 29, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Mobius Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Mobius Parent Corp. ("Parent") and an affiliate of Madison Dearborn Partners, will merge with and into MoneyGram with MoneyGram surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 14, 2022 (the "Merger Agreement"), each MoneyGram stockholder will receive $11.00 in cash (the "Merger Consideration") for each MoneyGram share owned.

1.      As discussed below, Defendants have asked MoneyGram's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA") in support of its fairness opinion.

2.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to MoneyGram's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because MoneyGram is traded on the NASDAQ Global Select Market, which is headquartered in this District. In addition, the Company's financial advisor, BofA, is also headquartered in this District.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of MoneyGram stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant W. Alexander Holmes has served as a member of the Board since 2015 and is the Company's Chief Executive Officer and Chairman of the Board.

9. Individual Defendant Amb. Antonio O. Garza has served as a member of the Board since 2012.

10. Individual Defendant Alka Gupta has served as a member of the Board since 2021.

11. Individual Defendant Francisco Lorca has served as a member of the Board since 2021.

12. Individual Defendant Michael P. Rafferty has served as a member of the Board since 2016.

13. Individual Defendant Julie E. Silcock has served as a member of the Board since 2021.

14. Individual Defendant W. Bruce Turner has served as a member of the Board since 2010.

15. Individual Defendant Peggy Vaughan has served as a member of the Board since 2014.

16. Defendant MoneyGram a Delaware corporation and maintains its principal offices at 2828 N. Harwood Street, 15th Floor, Dallas, Texas 75201. The Company's stock trades on the NASDAQ Global Select under the symbol "MGI."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

19. MoneyGram, together with its subsidiaries, provides cross-border peer-to-peer payments and money transfer services in the United States and internationally. The company operates through two segments, Global Funds Transfer and Financial Paper Products. The Global Funds Transfer segment offers money transfer services and bill payment services through third-party agents, including retail chains, independent retailers, post offices, banks, and other financial institutions; and digital solutions, such as moneygram.com, account deposit, and kiosk-based services, as well as mobile app solutions. The Financial Paper Products segment provides money

orders to consumers through its agents and financial institutions under the MoneyGram brand and on a private label or co-branded basis with various agents and financial institutions; and official check outsourcing services for banks and credit unions. MoneyGram International, Inc. was incorporated in 2003 and is based in Dallas, Texas.

20. On February 15, 2022, the Company and Madison Dearborn Partners jointly announced the Proposed Transaction:

> DALLAS and CHICAGO, Feb. 15, 2022 /PRNewswire/ -- MoneyGram International, Inc. (NASDAQ: MGI) (the "Company"), a global leader in the evolution of digital P2P payments, and Madison Dearborn Partners, LLC ("MDP"), a leading private equity firm based in Chicago, today announced a definitive agreement under which funds affiliated with MDP will acquire all outstanding shares of MoneyGram for $11.00 per share in an all-cash transaction valued at approximately $1.8 billion. The purchase price represents a meaningful premium of approximately 50% to MoneyGram's unaffected closing stock price on December 14, 2021, the last trading day prior to media speculation regarding a possible transaction.
>
> "We are excited to enter into this transaction with MDP, which will deliver immediate and compelling value to shareholders and enable us to accelerate the advancement of our digital growth strategy," said Alex Holmes, MoneyGram Chairman and CEO. "This transaction is the culmination of a thorough process by the MoneyGram Board to enhance shareholder value while positioning our business for continued growth and expansion. MoneyGram has undergone a rapid transformation over the last several years to expand our digital capabilities and adapt to the evolving needs of our customers. By partnering with MDP and becoming a private company, we will have greater opportunities to innovate and transform MoneyGram to lead the industry in cross-border payment technology and deliver a more expansive set of digital offerings, while leveraging our global platform for new customers and use cases. This transaction provides exciting opportunities for our dedicated MoneyGram team and partners, and I'm incredibly excited about the path ahead."
>
> "MoneyGram is a leader in cross-border payments with one of the strongest brands and reputations in the industry, and we are excited to partner with Alex and his leadership team as they continue to lead MoneyGram's digital growth strategy," said Vahe Dombalagian, a

Managing Director on MDP's Financial and Transaction Services team. "We are looking forward to applying our substantial experience growing digital businesses and deep payments knowledge to help MoneyGram further strengthen its market-leading cross-border capabilities and enhance its digital platform. Alex and his team have transformed MoneyGram over the past few years, and we are excited to help them execute the important work ahead to continue evolving and growing MoneyGram's business."

**Transaction Details**

Under the terms of the agreement, which was unanimously approved by the MoneyGram Board of Directors, MoneyGram shareholders will receive $11.00 in cash for each share of MoneyGram common stock they own. In addition, upon the closing of the transaction MDP will be refinancing the Company's outstanding debt, which was $799 million as of December 31, 2021.

Committed debt financing for the transaction has been provided by Goldman Sachs & Co. LLC, Deutsche Bank Securities Inc. and Barclays. The transaction is expected to close in the fourth quarter of 2022, subject to customary closing conditions, including approval by MoneyGram shareholders and receipt of regulatory approvals, including required approvals in various jurisdictions related to money transmitter licenses. Upon completion of the transaction, MoneyGram will become a private company and MoneyGram shares will no longer be listed on any public market.

The agreement includes a 30-day "go-shop" period expiring on March 16, 2022. During this period, the MoneyGram Board and its advisors are permitted to actively initiate, solicit, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that may offer alternative acquisition proposals. MoneyGram will have the right to terminate the MDP agreement to enter into a superior proposal subject to the terms and conditions of such agreement. There can be no assurance that this "go-shop" process will result in a superior proposal or that any other transaction will be approved or completed. MoneyGram does not intend to disclose developments with respect to the go-shop process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

**Leadership and Headquarters**

Following the close of the transaction, it is expected that MoneyGram will continue to operate under the MoneyGram brand

and be led by Alex Holmes and the Company's existing leadership team. MoneyGram will maintain its headquarters in Dallas, Texas.

\* \* \*

**Advisors**

BofA Securities, Inc is serving as exclusive financial advisor to MoneyGram, Vinson & Elkins LLP is acting as legal counsel and Paul Hastings LLP is acting as financial services regulatory counsel.

Goldman Sachs & Co. LLC is acting as lead financial advisor to MDP, Deutsche Bank Securities Inc., Barclays and J.P. Morgan Securities LLC are acting as financial advisors to MDP and Latham & Watkins LLP, Kirkland & Ellis LLP and Covington & Burling LLP are providing legal counsel.

\* \* \*

21.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that MoneyGram's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

22.     On March 29, 2022, MoneyGram filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23. The Proxy Statement fails to provide material information concerning financial projections by MoneyGram management and relied upon by BofA in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and BofA with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that MoneyGram management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

25. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not

misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

27. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

28. The Proxy Statement further fails to disclose the unlevered, after-tax free cash flows that MoneyGram was forecasted to generate during the Company's fiscal year 2022 through fiscal year 2026, which was used in BofA's discounted cash flow analysis.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29. With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual financial metrics for the companies observed by BofA in

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

the analysis, including the enterprise value and Adjusted EBITDA for each company selected and observed by BofA in the analysis.

30. With respect to BofA's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual financial metrics for the transactions observed by BofA in the analysis, including the transaction values, the enterprise value, and, Latest-Twelve-Month Adjusted EBITDA for each target company selected and observed by BofA in the analysis.

31. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values of MoneyGram; (ii) the Company's projected unlevered free cash flows for fiscal years 2022 through 2026; (iii) the inputs and assumptions underlying the use of a range of terminal multiples of 6.0x to 8.0x; (iv) the inputs and assumptions underlying the use of the range of discount rates of 8.3% to 10.4%; and (v) the estimated weighted average cost of capital for the Company.

32. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

38. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of MoneyGram within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of MoneyGram, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of MoneyGram, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of MoneyGram, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 31, 2022

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*